[No. 7085. Decided April 25, 1908.]

NORTH YAKIMA BREWING & MALTING COMPANY, *Respondent*,
v. NORTHERN PACIFIC RAILWAY COMPANY, *Appellant*.[1]

CARRIERS—DELIVERY—LIABILITY FOR GOODS DESTROYED—TERMINATION OF RELATIONS—EVIDENCE—SUFFICIENCY. A consignee had a reasonable opportunity to remove its goods, and the railroad company is, therefore, not liable as a common carrier for their loss, where it appears that the consignee in the forenoon called for beer containers, that had been received during the previous four days, and was told that the bills would be ready and it could have the goods at any time after noon of that day, that the consignee's place of business was only four hundred feet from the warehouse where the goods were stored, and it had its own drays, but did not call that afternoon, because not suiting its convenience to do so, and without fault of the carrier, the warehouse and goods were destroyed by fire that night.

Appeal from a judgment of the superior court for Yakima county, Rigg, J., entered June 26, 1907, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action to recover from a carrier for the loss of goods. Reversed.

[1]Reported in 95 Pac. 486.

*B. S. Grosscup* and *Ira P. Englehart*, for appellant.

*Snyder & Luse*, for respondent.

FULLERTON, J.—The appellant is a common carrier operating lines of railway in this state and elsewhere, one branch of which passes the city of North Yakima. · The respondent is engaged in the business of manufacturing and selling beer and other malt products at the city named, and in the course· of its business ships large quantities of its products to different parts of the state, in containers of various kinds, the title to which it retains in itself. These containers, when emptied of their contents by the respondent's customers, are returned to it over the appellant's lines. Between the first and the morning of the fifth days of May, 1906, there were returned in this manner over the appellant's road containers of the aggregate value of $394.80. On the morning of May 5th, the respondent's superintendent called at the appellant's freight office in North Yakima and asked for his expense bills, desiring to pay them and take away the several shipments that had there accumulated. The appellant's agent replied that he did not then have the bills ready, but that he would have them ready at any time after noon of that day. The respondent did not call for them in the afternoon, and they were destroyed the following night in a fire which burned the warehouse in which they were stored. The fire that burned the warehouse originated on the property of a third person, some distance from the appellant's warehouse, and spread thereto in spite of the efforts made to control it. The fire did not originate nor spread to its warehouse as the result of negligence on the part of the railroad company. The trial judge, trying the case without a jury, on the foregoing facts, held that the appellant's liability with reference to the goods was that of a common carrier; and, since the loss or destruction of the goods was not occasioned by the act of God nor the public enemy, it was liable to the respondent for their value. The correctness of this holding under the facts presents the only question we have found it necessary to consider.

In the case of *Fisher v. Northern Pac. R. Co., ante* p. 258, 94 Pac. 1073, we held that the mere placing of goods in storage by the carrier after they had arrived at their destination did not reduce the carriage liability to that of a warehouseman, but that its liability as carrier continued until such time as the consignee had a reasonable opportunity to inspect the goods and take them away in the usual course of business. The converse of the rule must be that after goods have been transported by the carrier to their place of destination, and a reasonable opportunity is given the consignee to inspect them and take them away, the carrier's liability thereafter is that of a warehouseman, and it can be held for the loss of the goods only when that loss is occasioned by some negligence on its part.

Was a reasonable time given in the present case to inspect and take the goods away? It seems to us that there was. What constitutes a reasonable time for the removal of goods after notice must, of course, vary with the circumstances of each particular case, and no general rule can be laid down applicable to all cases by which the fact can be determined, but, because of the nature of the liability and its extreme hazard to the carrier, it can be said that the consignee must act promptly after receiving notice of the arrival of his goods, and not defer taking them away to attend to other matters of his own no matter how important they may be. The liability of a common carrier for goods in transit is an extraordinary liability, and although founded on sound principles of public policy, is not to be extended beyond the point where necessity for its existence continues. In the case before us there was ample opportunity given to take the goods away. The respondent's place of business was but four hundred feet from the warehouse where the goods were stored. It had its own drays and trucks, and the only reason why the goods were not taken away during the afternoon preceding the night the fire occurred was that it did not suit the convenience of the respondent. This being true, we think it should bear the

loss instead of the appellant, since each of the parties is equally free from responsibility for the fire which caused the loss.

The judgment appealed from will be reversed, and the cause remanded with instructions to enter a judgment to the effect that the respondent take nothing by its action, and that the appellant recover its costs.

HADLEY, C. J., RUDKIN, DUNBAR, CROW, and MOUNT, JJ., concur.